U.S. Embassy in the Philippines United States I can't quite see and understand what is it about the indemnity that causes a peculiar circumstance if it is the case that the subsidy itself is not a peculiar circumstance and it turns out that the law permits the sale price to be the basis then the indemnity doesn't matter the person is entitled to that high sale price and then if it turns out that no it's not going to be the sale price as the basis but in fact it's going to be this cost method then again the indemnity is going to be irrelevant so maybe I'm not quite understanding what your indemnity argument is with respect to saying it's a peculiar circumstance but to me it seems like the potential more core peculiar circumstance is the very large government subsidy that arguably itself is getting baked into the sale price Right, I see that my time is up No, please answer the question The indemnity is the peculiar circumstance we're asserting the indemnity is a peculiar circumstance here because the indemnity is operating as a classic bootstrap in this instance the peculiar circumstances has to do all the peculiar circumstances that we've identified here have to do with sort of a circular cash flow where the plaintiffs have asserted that they paid X for these wind farm businesses but then the recipient Teragen is either promised or has promised to make related payments back to the plaintiffs so the way that it works with the indemnity is the idea is that we're Can I simplify this? Sure Let's say Toyota sells a car for $25,000 Right and then the government announces and passes a law anybody that owns a Toyota we're going to give you $10,000 congratulations Toyota owners and then all of a sudden the Toyota dealerships bump their price up to $30,000 and then the Toyota dealerships say anybody that buys a Toyota from us we promise you're going to get $10,000 it's really the government law that got passed for ordaining that everybody's going to get $10,000 it's not necessarily the indemnity I don't think that the Toyota from $25,000 to $30,000 am I right or am I wrong about that? What is it about the indemnity that now somehow distorted the sale price? I mean it seems like it's more the the laws passage that gave the Toyota dealerships the opportunity to raise their prices I don't disagree with respect to your hypothetical but there's one key fact that's different from the hypothetical you laid out and the facts of this case is that in this case the Section 1603 payment was based on the purchase price you calculate it based on the allocation of the purchase price to the particular assets Okay, so change my hypothetical you get 30% of $25,000 or 30% of the sale price Yes, and if there was a if what Toyota was selling was not just an individual asset it's not just they didn't just buy a turbine they bought multiple assets that constituted a wind farm business that you have to make allocations as between eligible and ineligible property but the bottom line is that by virtue of basically what Terogen was saying is you agree to this purchase price because it will increase your 1603 payment and if the government doesn't end up being on the hook for making that full payment Terogen will come in and will pay you the difference and so this idea of you pay us $100,000,000 and you put in for a $30,000,000 1603 payment but if you don't get a $30,000,000 1603 payment if you only get a $15,000,000 1603 payment the indemnity kicks in and Terogen says we'll pay you the difference we'll pay you the $15,000,000 Could I back you up for just a second The contract here between Terogen and the ALTA entities had a single sales price for everything that was being transferred Am I correct about that? I believe so, yes, your honor And then what happened? Afterwards KPMG came along I don't know how long afterwards and the parties Terogen and ALTA The ALTA entities retained KPMG to allocate the purchase price Is that what happened? In order to make an application for these 1603 payments you have to have the basis of the eligible property attested to and so I believe that that's how KPMG became involved in the application process I don't know whether it was commensurate with or after the fact but the bottom line is Now what did KPMG purport to be doing to be making a determination of the fair market value of the tangible assets? They did two things They offered two two sort of spreadsheets if you were One is that they determined they vouched for what the costs were and then the other one is they vouched for the pro rata allocation between they distinguished between eligible property on one side and ineligible property on the other and so then they determined what that would be and said that it was a reasonable way to allocate basis as between or allocate the purchase price as between eligible and ineligible property So they didn't do it in terms of fair market value? They didn't apply the residual method They claim it's fair market value Whether it's the residual method or peculiar circumstances the fair market value test is the test They didn't purport to be determining the fair market value of the acquired tangible assets I believe that they I believe that they would say that they did purport to based on this allocation method that they used, yes And the allocation method was what? Was they took the purchase price They figured out the relative percentage of eligible development and construction costs over the total development and construction costs for each of these businesses and then they multiplied that percentage based on the purchase price and said that's allocable to eligible the eligible assets and everything else is ineligible assets which doesn't allow for Did they pay any attention to the value the fair market value of turbines and all the assets that were included here? Like the fungible How much would it cost to buy a turbine from the company? No So then how was it that they were doing fair market value if they didn't look to the market value of the acquired assets? Well I would imagine what they're going to say is they started by looking at in order to determine the percentage No, no, I'm asking your view of it Why is this? No, I agree with you They did not determine They completely departed from the actual cost of the assets Or the fair market value of the assets Yes, yes I mean they said everything They said basically the cost In each case they said that the eligible assets are the cost plus whatever the allocable portion of what's left over Everything except they backed out land and a few other things which were specifically not qualified assets And then they just spread the excess purchase price amongst all the assets That's exactly what they did Before you go let me just ask another question For your residual method for Parsons' cost method is there any analysis involved in potentially backing out the subsidy? Or is that just something that you don't really think about or even worry about because really all you're trying to do is just calculate the cost or fair market value of the individual turbines, etc. That I think is the answer Is that because ultimately the question here is their basis in the eligible property What Parsons what the government is concerned with is looking at that component of it So you don't And you're not You didn't argue below that the government subsidy itself is a peculiar circumstance Is that fair? Yeah, that is correct That's what we didn't argue What we argued was the indemnifications which guaranteed them a particular subsidy payment On that theory there'd be no capital gain at all because all that they were selling were the used turbines which couldn't be worth as much as they were when they were originally purchased No, Your Honor Because They're going to say that they paid a tremendous amount of tax on this because remember that if you add up all the costs it comes up to only 60% of what they got for these wind farms So this was a huge great deal for Terragen But you're saying that's not enough Yeah, but the thing is is that they didn't allocate appropriately They didn't determine what the proper basis of the eligible assets compared to the entire wind farms were They didn't They shoehorned all the value into the tangible eligible assets and basically said there's nothing left for all these intangible and what these plaintiffs were actually purchasing which was these revenue streams You're saying they paid no tax? No, Terragen attests that they paid a lot of tax but the thing is is that they paid tax on This isn't a question of the tax to them Yeah It's a question of how to calculate the grant which they get only for the tangible assets Correct Of course, then it has to be Well, that's equivalent I think we have the position Okay, thank you, Your Honor I'll reserve the rest of my time for questions Mr. Rosenbaum Your Honor, let me start with the question that you all asked a number of questions about which is how do you treat the cash grant You didn't see a significant briefing of that because the government did not argue to this court that the error was including the value of the cash grant Perhaps not, but the cash grant would be backed out under the fair market value methodology Well, but they have Let me just say the law is crystal clear No, no, but it's not correct No, absolutely not correct, Your Honor That under their computation it's backed out? Absolutely not, Your Honor because the law is perfectly clear that the value, the tax be it a tax credit or whatever is considered part of the value No, that's your argument about how it should be considered What I'm asking is whether Parsons' calculation using the cost method was just the cost of the assets and it wouldn't include the value of the government grant I would not characterize that as the approach that he took, Your Honor Why not? Well, because what he did is he looked at the cost of Terrigen to construct the facility plus what he thought was a reasonable developer fee on top of that That's how he did it Can we just assume for the moment that Terrigen had qualified for the 1603 cash grant and thus never sold the farms What would the basis of the farms have been in that instance? How would one go about calculating the basis for Terrigen? The basis is the cost to the taxpayer under any circumstance If Terrigen were the taxpayer then it would have been their cost to construct the facility Just like if someone were to build a house So it would be the cost method? Well, no, that would be considered Well, their cost it's what they paid But remember, plaintiffs here are buying property The cost to them is what they paid when they bought the facility I'm trying to think through a hypothetical Terrigen bought these farms for something like $400 million and then put some money into it Yes Right? And then the law gets passed in 2009 Everybody gets 30% of their basis Congratulations Now how does Terrigen assuming it qualified calculate its basis? Terrigen's basis would be whatever their out-of-pocket costs were And they of course would pay no income tax at that point of any kind But wait But that I think the point is that if Terrigen had applied for the grant itself Yes If it hadn't had this what you characterize as a problem because of ownership by non-profits the grant to Terrigen would have been materially lower than the grant to the ALTA entities Correct? Yes, your honor But that's the same in any transaction How could it be that Congress would intend that the grant should be inflated because there was a sale of the property? Because that's how every transaction works, your honor If I build a building myself I claim depreciation based upon my out-of-pocket expenses Now we're talking about a particular incentives that are being created by this statute Why would it be that Congress would want to inflate the value of the grant just because people entered into a purchase and sale transaction? Because it's not being inflated, your honor It's not? No, absolutely You said it was hugely increased It is That's because, your honor If I could If I build a building myself and it cost me but your honor let me just because and it cost me $80 million to build it I depreciate based upon the $80 million If I qualify for an investment tax credit I do it based upon the $80 million If rather than holding ownership I sell it to someone else for $100 million that person claims depreciation on $100 million they claim the investment tax credit on $100 million Congress had no intention I think you're not addressing my question Here's a special program designed to create grants in lieu of tax credits to encourage people to build these wind farms to buy the turbines to do the asset to acquire the assets necessary to do that How could it be that Congress would want the basis of those assets for purposes of the calculation of the grant to be increased just because people engage in a sale transaction so that if if Terragen itself had applied for the grant the number would be $100 million but if they sell it to somebody else suddenly the grant is $300 million Why does that fit into the purposes of this program? The purpose of the program was to duplicate what already existed under the investment tax credit and that's absolutely clear This was not a new program This was a program that substituted for a certain period of time a cash grant in lieu of an investment tax credit but based on the same precepts that would be used for both and in an investment tax credit context basis is what the taxpayer paid for the property that constitutes that gives rise to the tax credit and if the person built it themselves what they paid out of pocket to build it themselves is their basis If they purchase it it's what they paid to purchase it and the offsetting why would Congress have this system in place? Because they know that if there is a sale at a higher price than what the cost was to the original developer that developer will pay tax on the delta between the two which offsets entirely Can I go back to my Can I go back to my Can I go back to my Toyota analogy? I'm not done Ok Toyota they sell their cars for $25,000 and then the government passes a law anybody that owns a Toyota we're going to pay you $10,000 Toyota all of a sudden starts selling their Toyotas for $30,000 and of course a lot of people maybe that wouldn't have bought the Toyotas are now buying the Toyotas Doesn't the rebate law that Congress passed cause people to buy the Toyotas at an inflated price above the fair market value? No, your honor Ok Fair market value the black letter is that fair market value is established by arm's length negotiations what a willing buyer will pay a willing seller and what a willing buyer will pay a willing seller for property is affected almost always by considerations of the law take a recent example there's now limited deductibility as to property taxes that just happened you read in the newspapers that may have a depressing impact on home prices housing prices because you no longer qualify for that what people pay for their homes or will pay for their homes may go down as a result what they pay for that house is still the fair market value of the house when they go to pay property taxes your problem is that the statute provides a grant based on the value of the tangible assets and not something else like the rebate and that gets to the question how has the law treated that issue and this is not materially brief because the government did not raise this issue in its pleadings to the court except tangentially in the reply brief it is dealt with at length in our finding of fact and conclusion of law which is docket 158 paragraphs 258 to 64 but as an example in the Sachs decision by the 9th circuit the court said investors may take depreciation deductions and tax credits based upon the purchase price they pay even though what they paid was anticipation of those benefits that is on all fours with the questions that the court is asking the IT&S decision a tax court decision by 1991 Sachs is 69 F third 982 at 991 IT&S is 97 tax court 496 at 532 note 28 quote tax court the supreme court has recognized that the tax savings generated by an asset can be an identifiable component of its value its meaning of the assets value and we all know from buying houses ourselves that as an example the deductibility of property taxes is an influence as is the ability to deduct the yeah but you're not addressing the purpose of this statute you're arguing that the grant ought to be based on the existence of the grant ought to increase the grant and it's difficult to see that's what congress intended here congress intended that whatever happened congress said the grant will be based upon the basis of the property and it said that we want this to mean the exact same thing it already means for purposes of the investment tax credit the law is crystal clear I've provided some examples of how the courts have dealt with this issue there are many other examples it's uniformly the case that one includes in the value of the property whatever benefits come along with those property and in this particular case it was only the eligible property that qualified for the cash grant so by definition the benefits here are associated with the eligible property and this would be exactly how it would have worked had the cash grant program not been enacted and instead these people qualified for and sought investment tax credits and that hasn't changed at all when it comes to the government's proposed residual method they seem to be looking at that, approaching it from the ground up going through the classes and from the ground up trying to build up what is the appropriate basis and the trial court seem to look at it more from the top down let's start with your sale price and now let's see if things like goodwill and going concern value can be backed out from that sale price and then make findings that there wasn't enough here to prove up that those things existed of any real value so I'm just wondering is that the right way to look at it, going from the top down rather than from the ground up I would describe it a little differently your honor as follows, the trial court definitely started with a proposition that we think is unassailable that basis is determined is the same as fair market value and fair market value is determined by the price established by arm's length negotiations so if one of these facilities transacted at 560 million dollars that's the fair market value and then the question becomes of course well what was in that transaction and if you assume 1060 applies and we have some arguments that it doesn't but let's assume 1060 does apply you have to allocate the purchase price to the various asset classes so what the judge said is let's see which asset classes were actually transferred as part of this transaction now the waterfall will tell you how you allocate the purchase price sequentially but the first thing is does it exist use an easy example class one is cash was any cash transferred if the answer is no then obviously there's nothing to allocate to class one you don't worry about the order in which you do it he went through all the classes and he determined and there was oodles of testimony on this that there were no classes other than class five which is tangible property. The problem with that is that he excluded the Parsons testimony if we were to hold that he made an error in doing that then your reported factual findings would have to be set aside so that the entirety of the testimony would be considered right? Well your honor we think otherwise because what Parsons did is say I will just consider there to be goodwill or going concern value without applying any definitions as to what those terms mean I'll just call that the money that's left over. But that's an argument that's not been briefed on appeal what I'm saying is we let us say that the trial judge made an error in not listening to Parsons explanation or that he made an error in excluding the testimony entirely and he should have taken it for what it was worth then we have a potential conflict in testimony between the Pete your accountants and Dr. Parsons right? I would say not your honor if one looks at those materials then if one concludes that there is no goodwill or going concern value by definition based upon the considerations that were applied by Judge Wheeler then there is nothing left over that could possibly be put into a class other than class five and that's the fundamental conclusion that Judge Wheeler reached based upon the testimony was that. Based on the testimony that's the problem. Yes your honor but I would submit and of course be happy to talk about the correctness of Judge Wheeler's decision as to Dr. Parsons but beyond that our view is that if that these facilities had not gone into operation yet that they cannot be goodwill or going concern value under those circumstances and we believe those are true both factually and as a matter of law based upon these courts precedents and if that is correct then there is nothing for Dr. Parsons to be addressing. No one disagrees that these facilities had not gone into operation at the time when they were purchased by the plaintiffs. This court in the Don case relying upon precedent by the tax court as well has said that goodwill and going concern value have a time component they're only built up as you operate over time. The direct answer to your question is your honor if you agree with that then there is no... Is it your view that the trial court made a legal ruling or a fact finding on going concern value? I think he did both. He was applying what he understood to be the legal test and he analyzed a number of facts and said based upon those facts I conclude that it doesn't exist. He did place a special emphasis on the fact that there is no they had not gone into operations we think as a matter of law that's enough to conclude that there's no goodwill or going concern value but he looked at additional facts as well. So for the residual method there's also class six intangibles. Yes. So is there potential for value to be put into that bucket? And that was addressed too your honor and the answer to that is no. And I'll get to why Dr. Parsons is irrelevant to that as well but the law is perfectly a contract can be a class six asset but only if it's above market. The law is very clear on that point. There was copious testimony that none of the contracts here were above market and therefore none of them qualified as separate assets. That was the conclusion that had been reached by KPMG originally and one of the questions was what did KPMG do? KPMG was looking for assets to which the purchase price might properly be allocated and they talked about goodwill and going concern value and concluded there wasn't any. They looked at all these other potential assets and found they didn't exist. That was confirmed by our what I'll call non class six non class five, excuse me, assets and concluded there weren't any. And Dr. and so Dr. if Dr. if Dr. Parsons for example had said oh I've identified certain contracts that I think are above market well that would have been additional factual information that his exclusion kept from being before the court but he didn't provide anything like that Your Honor and so once again we see no no condition under which Judge Wheeler's decision would be changed. Fundamentally the waterfall tells you in what order you assign the purchase price but the waterfall doesn't tell you which buckets exist. That's a separate inquiry. That's the inquiry that Judge Wheeler took. That's the inquiry KPMG had taken at the time that initial allocation was done and the conclusion reached was there were no other classes. So I guess the so-called waterfall method you're going through you're trying to figure out how to assign different chunks of the purchase price to the you know tangible assets and things like that and then you're what we have here is a large perhaps arguable remaining chunk of the sale price that maybe doesn't quite fit into the remaining classes whether it's six or seven. No Your Honor. So then what do we do in that kind of circumstance? Well there's nothing left over Your Honor. I mean that's you know the purchase price has told you what the fair market value is of the assets that were transferred. That's not  their peculiar... But the residual method then obligates and requires all of us to now divvy it up into these different classes. Into the assets that into the classes of assets that actually exist and so as I as to use my example again if class one doesn't exist nothing gets allocated to it. If goodwill and going concern value don't exist which is class seven nothing gets allocated to it. If there are no contracts that are above market or other things that will qualify as a intangible other than goodwill and going concern value then nothing gets attributed to class six. So then which class does enjoys the benefit of receiving all of the value of the sale price in case it doesn't fit into any other class? Class five. But I mean in the sense that class five would capture any asset not otherwise identified. That's the definition of class five but in this case of course... Any asset including intangible assets? No your honor. Well the phraseology is I think any asset not otherwise identified. But there are other categories after class five that deal with intangibles. Yes and you would put those in if you had identified another intangible that would be class six. We agree with that but there was a particular you know there are tests for determining I mean the principle indicia that the government points to is the existence of contracts and there's a particular legal test as to whether or not a contract can be an intangible. No question about that but there's a prerequisite which is that it be above market. Otherwise it's not deemed to be a separate intangible. This was addressed at great length and considered by the judge and I think the law is straightforward on that point. So if and of course these are issues on which great deference is owed to the judge's factual findings. This is a clearly erroneous review. Well and that is and his decision to exclude Dr. Parsons is subject to is not only subject to abusive discretion standard but because What case says that you can exclude someone's testimony on the grounds that he's a perjurer without giving him an opportunity to explain? Well I think the judge found that he Your Honor he made a factual finding. What case He testified What case? I think Unisys says that if the judge reaches the conclusion that he that the expert had engaged in serial perjury that that is the basis. Without giving the witness an opportunity to explain? Your Honor he gave explanations in the course of his testimony before he gave explanations in the course of his testimony. If it looks as if we need additional briefing on that point if it turns out to be dispositive we will say so. Any other questions? Okay. Thank you Mr. Rosenbaum. Mr. Weiner you have your rebuttal time. Thank you Judge Newman. Just a couple of points that I'd like to make on rebuttal. One is that here the government asserted that there were both all of class 5, class 6 and class 7 assets. Including class 6 assets being section 197 intangibles. And Dr. Parsons did directly speak to two of the big ones which would be the power purchase agreements and the interconnection agreements. And I would also refer you to when Turrigan had actually purchased the wind farms from ALCO and Duff and Phelps another accounting firm or valuation firm did a valuation. They put considerable value to the interconnection agreements. Basically saying let's value the businesses, what they acquired with the interconnection agreements and then what's value without the interconnection agreements. The delta was the value that they ascribed. And so here it is highly relevant that Dr. Parsons got excluded. As well we disagree with plaintiff's council that what a court should do is to try to figure out whether there is goodwill or going concern value and if it can't identify it then we can't allocate anything to that bucket. That's contrary to the residual method and it puts the cart before the horse. Part of what the residual method is designed to do is to figure out whether the unidentifiable assets of residual goodwill and going concern value actually exist. And if you can't substantiate the fair market value of the class 5 assets as being the full purchase price then the residual method requires you to allocate those either in class 6 or class 7. Why not class 5? If it doesn't fit very well in any other bucket that's what class 5 is for, right? No, the assets themselves, that's what class 5 is for. The value is what we're talking about, the purchase price. The idea being is that the value of those assets that do not belong in any other class belong in class 5 and so you determine what the fair market value is. But even if some of these assets in addition to the tangible assets fit within class 5, the statute doesn't say you get a grant based on class 5, it says you get a grant based on the value of the tangible assets. Right, and again within class 5 then you have to allocate between eligible and ineligible, which is I think sort of the fundamental point. What plaintiffs counsel keeps asserting is that well if I buy, you know, if I sell a house the house is whatever the fair market value is. But here they didn't just sell a house, they sold a myriad of assets, including both tangible and intangible. So that only begs the question. The question is how do you allocate that purchase price among the assets acquired? And so these examples of a house don't really help. And then finally I would just say one thing about if I... One more sentence, we're well over time. Okay. Is that I would just refer Judge Chin to the Van Duzer case, which is helpful I believe in terms of the tax benefit and indemnities. Here, what you didn't have is here they guaranteed a particular tax, they guaranteed a particular subsidy, which influenced the purchase price. In Van Duzer, which was a different scenario, there was no guarantee. They just basically said we're going to give you a working facility and there was an expectation of tax benefits to come from that, but there were no guaranteed payments coming from the seller to the purchaser. That's what makes this a peculiar circumstance. And in conclusion, we ask that you reverse. Thank you, Your Honors. Okay. Thank you. Thank you both. The case is taken into submission. All rise. The Honorable Court is adjourned from day to day.